IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GARTH ALAN FINLEY,

    Plaintiff,

v.                                                                                                                        Civ. No. 14-736 SCY

CAROLYN W. COLVIN,
*Commissioner of the*
*Social Security Administration*,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand the Social Security Administration (SSA) Commissioner's decision to deny Plaintiff disability insurance benefits. ECF No. 18. For the reasons discussed below, the Court will grant Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

**I.   BACKGROUND**

    **A.   Plaintiff's Medical History**

Plaintiff Garth Finley is a forty-four year old man who alleges a history of psychological ailments, including anxiety and depression, and physical ailments including scoliosis, foot fractures, and tendonitis, that have ultimately rendered him disabled. Administrative Record ("AR").

        *i.   Plaintiff's Mental Health History*

On September 11, 2007, Dr. Bob Anderson, Ph.D., performed a partial Mental Status Examination of Plaintiff. AR 450, 452-62. He noted that Plaintiff had a history of alcohol

1

dependence, displayed poor concentration, was easily distracted, and seemed "brittle" and defensive. AR 452-53. Dr. Anderson diagnosed Plaintiff a GAF score of 50. AR 461.

From June through August 2009, Plaintiff received treatment from Dr. Ralph Moller, D.O., where he reported unstable moods and was diagnosed with anxiety and depression, for which he was prescribed Xanax. AR 469, 471. At an examination in August 2009 by Dr. Peter Carman, he also reported rages and blackouts. AR 506.

On November 20, 2009, Dr. Scott Walker, M.D., performed a psychiatric evaluation on Plaintiff, finding that he had substance addiction disorder, but noting that there was insufficient evidence to establish a mental functional issue and that "credibility issues are present." AR 590, 602.

Dr. Robert Kellogg, M.D., treated Plaintiff from October 2009 through June 2011. At their initial meeting, Dr. Kellogg diagnosed Plaintiff with alcohol dependence, anxiety, and depression, assigning a GAF score of 52. From December 2009 through July 2010, he found Plaintiff to be alert and oriented, with normal affect, although Plaintiff was anxious and irritable. AR 763-65, 767, 771, 773, 850-56, 863, 875-81. His psychological diagnoses of Plaintiff remained unchanged, and he assessed Plaintiff GAF scores of 52-58. *Id.* When he met with Plaintiff in August 2010, he found Plaintiff to be alert and oriented, as well as irritable and labile, with limited insight and judgment, but at his meeting with Plaintiff in November 2010, he found that Plaintiff had improved and assessed him a GAF score of 54. AR 761, 792. From December 2010 to June 2011, Plaintiff's condition again appeared to stabilize, and while his ultimate diagnoses remained unchanged, Dr. Kellogg observed Plaintiff to behave normally and assessed GAF scores ranging from 55-57. AR 836-844.

From January to August 2010, Plaintiff was also evaluated by Robert Moslow, MSW. Mr. Moslow consistently found that Plaintiff presented with anxiety or depression, and sometimes mood dysregulation. AR 847-73. During the course of his work with Plaintiff, Plaintiff's psychological health appeared to improve somewhat, with Mr. Moslow assessing Plaintiff a GAF score of 45 at the outset of Plaintiff's treatment and a GAF score of 60 consistently by the end of his treatment. *Id.*

Plaintiff was evaluated at the request of the State of New Mexico Disability Determination Services on February 18, 2011 by Dr. Cathy Simutis, Ph.D. She observed that Plaintiff had depressed and anxious affect, diagnosed him with generalized anxiety disorder and bipolar disorder, and found that Plaintiff was mildly limited in his ability to adapt, moderately limited in his ability to understand and remember instructions, and markedly limited in his ability to concentrate and persist in tasks, as well as interact with coworkers and the public. AR 802-03.

Dr. Alvin Smith, Ph.D., a non-examining psychological consultant, provided a further assessment of Plaintiff on March 19, 2011, finding that Plaintiff had moderate limitations in maintaining attention, social functions, maintaining concentration, persistence, and pace, not being distracted by others at work, and interacting appropriately with coworkers and supervisors. AR 807, 820. He found that Plaintiff "retains the capacity to understand, remember, and carry out multi-level instructions; attend/concentrate for extended periods without a need for unscheduled breaks; apply reasonable judgment in worklike settings; and interact appropriately with co-workers, supervisors, and the general public on an incidental basis." AR 808.

Dr. Steven Jenkusky, M.D., treated Plaintiff from October 2011 to June 2012. In October 2011, Dr. Jenkusky diagnosed Plaintiff with unspecified mood disorder and anxiety and assessed him a GAF score of 60. AR 834. His evaluation of Plaintiff remained unchanged through June

2012, with the exception that in May 2012 he assigned Plaintiff a GAF score of 58. AR 825-31. On July 6, 2012, Dr. Jenkusky completed a depression and anxiety listings questionnaire in which he noted Plaintiff had "marked" restrictions in activities of daily living and social functioning, had deficiencies of concentration, persistence, or pace, as well as repeated, extended, easily triggered episodes of decompensation, and a history of inability to function, but he noted that this condition had not persisted for a year, stating that it began in October 2011. AR 897-902. Dr. Jenkusky opined that "due to persistent . . . illness which to this point has not been successfully treated" Plaintiff was unable to maintain employment. AR 899, 902.

Beginning in November 2011, Plaintiff also received treatment from Nicole Dixon, LPCC, in both group and individual therapeutic sessions on a weekly basis. AR 891. She completed a depression listings questionnaire on July 5, 2012 in which she stated that Plaintiff had "marked" restrictions in activities of daily living and social functioning, had deficiencies of concentration, persistence, or pace, as well as repeated, extended, easily triggered episodes of decompensation, and a history of inability to function "outside a highly supportive living arrangement." AR 888. She further noted that Plaintiff had "difficulty managing change and is not flexible in his ability to deal with fluctuations in his schedule" but she noted that Plaintiff "may be able to handle a job at some point in the future once he's managed sustained stability, however at this point a full time job might be too taxing." AR 891. She also completed an anxiety listings questionnaire on July 5, 2012, in which she reiterated her findings of marked limitation on his activities of daily living and social functioning, deficiencies of concentration, persistence, or pace, as well as repeated, extended, easily triggered episodes of decompensation, although she did not find that the anxiety was sufficiently severe to render him completely

unable to function independently. AR 894. She noted that full time employment would exacerbate Plaintiff's anxiety issues. *Id.*

### ii. *Plaintiff's Foot and Back History*

Plaintiff reports a history of foot and back ailments. On June 20, 2008, Plaintiff was treated at Foot and Ankle Associates. He was assessed with a "mild foot drop," a "problem at the fibular head and possible pressure to the superficial peroneal nerve" and recommended for a neurological consult. AR 406. On October 15, 2009, Dr. Sean Mullen, D.O., observed that Plaintiff had degenerative changes in both mid feet, his right knee and his "ac" joints. AR 565. From October 2009 through January 2010, Plaintiff reported foot and ankle pain, and in April 2010, Plaintiff developed 2+ edema in his right foot and ankle with decreased pedal pulse, 1+ edema in his left foot, as well as limited range of motion in both feet due to pain. AR 687-89, 729. X-rays of his right foot and ankle showed no obvious fractures or dislocations and well preserved joint spaces. AR 731. At that time, he reported that he had a history of ankle injuries. AR 696, 731. In May 2010, Plaintiff was diagnosed with a non-displaced stress fracture to his right ankle, as well as tendonitis in his right Achilles tendon. AR 732. On May 28, 2010, Plaintiff reported no pain in his right foot or ankle, although an MRI revealed tenosynovitis of the tibial tendon, as well as degenerative changes in the navicular and talonavicular joint, a potential fracture in the navicular and a fracture in the fourth medial metatarsal. AR 746. Plaintiff was prescribed orthotics. *Id.*

At Plaintiff's consultative physical examination on January 24, 2011, performed by Dr. Karl Moedl, M.D., Plaintiff had full range of motion in his lower extremities, normal stance and gait, normal lower extremity pulses, as well as full range of motion in his cervical spine and reported no foot pain. AR 798-99. At Plaintiff's consultative physical examination performed on

March 9, 2011 by Dr. Allen Gelinas, M.D., Plaintiff appeared capable of walking on his heels, squatting, and having normal range of motion, stance, and gait in his lower extremities as well as normal range of motion in his spine. AR 804.

### iii.     *Plaintiff's Gastrointestinal and Endocrine History*

Plaintiff has a long history of gastrointestinal and endocrine issues. In July 2007, Dr. Gregory Hall, M.D., treated Plaintiff for an epigastric and an umbilical hernia. On September 14, 2008, Plaintiff's hepatic function was tested, with all results being in the normal range. AR 419. On September 29, 2008, Plaintiff was admitted to the hospital for three days because of a seizure episode. AR 414-15. Dr. Rodolfo Ganzon, M.D., evaluated him and noted that he suffered from elevated liver enzymes, possibly as a result of fatty liver disease, gastritis/reflux, and pancytopenia. *Id.* In November 2008, Plaintiff was treated by Dr. Gregory B. Hall, who performed an upper and lower endoscopy and diagnosed him with severe gastritis, reflux esophagitis, gastric polyp, colitis, and colon polyps. AR 439, 441. During the same time period, Plaintiff was treated for hypercalcemia. AR 589, 629, 632, 634, 637, 640. Plaintiff's blood test, which was performed on November 21, 2008, also revealed possible deficient renal function. AR 437. In August 2009, Plaintiff received treatment at Presbyterian Kaseman Adult Care, where he was diagnosed with dysphagia and gastroesophageal reflux disease and referred to an enterologist. AR 469. Plaintiff also has a history of high cholesterol. *See, e.g.,* AR 422, 425, 531.

## B.  Procedural History

Plaintiff filed his Title II applications for disability insurance benefits and supplemental social security income on February 23, 2009. AR 10. His claims were denied on November 23, 2009, and his request for reconsideration was denied on March 21, 2011. *Id*. Plaintiff requested a hearing on May 19, 2011. *Id*. An in-person hearing was held on July 17, 2012. *Id*. The ALJ

issued his decision on December 12, 2012 denying Plaintiff's request for benefits. AR 10-25. The Appeals Council denied Plaintiff's appeal of the ALJ's decision on June 24, 2014. AR 1.

## II.   APPLICABLE LAW

### A.  Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the Claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that

showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, Claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and

discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III. ANALYSIS

Plaintiff asserts that the ALJ erred by improperly disregarding certain findings of Drs. Simutis and Smith in assessing Plaintiff's mental limitations for the purposes of his RFC. ECF No. 18 at 12-13. Plaintiff argues that this also caused the vocational expert's ("VE") opinion at Step Five to be erroneous because the ALJ posed an improper hypothetical. *Id.* at 16. In addition, Plaintiff contends that the ALJ did not properly determine Plaintiff's past relevant work. *Id.* at 18.

The Commissioner responds that the ALJ properly examined and incorporated the opinions of Drs. Simutis and Smith, and that the ALJ's rendition of Plaintiff's mental limitations is supported by the administrative record. ECF No. 23 at 8-13. Further, the Commissioner contends that the ALJ properly characterized Plaintiff's past relevant work. *Id.* at 14.

The Court finds that the ALJ did not err in his discussion of Dr. Simutis's opinion, but did fail to properly consider Dr. Smith's opinion, and that this error requires remand. Further, because the ALJ erred at Step Four, Phase One, his analysis at Step Four, Phase Two is also erroneous and must be revised on remand.

### A. Consideration of Physician Testimony

#### i. *The ALJ did not fail to explain his rejection of Dr. Simutis's opinion*

Plaintiff contends that the ALJ erred in disregarding Dr. Simutis's findings that Plaintiff had marked limitations on his ability to concentrate and persist at tasks, as well as his ability to interact with coworkers. ECF No. 18 at 13. Specifically, Plaintiff argues that ALJ erred because he only discussed the GAF score assessed by Dr. Simutis, and failed to address his reasons for rejecting her other assessments of Plaintiff's limitations. *Id.* at 14-15.

The ALJ found that Plaintiff was capable of understanding, remembering, and carrying out multi-level instructions, interacting appropriately with co-workers and supervisors, although he was limited to incidental contact with the public, and he could maintain concentration, pace, and persistence for two hours at a time. AR 14. This RFC contradicts Dr. Simutis's opinion that Plaintiff has marked limitations in his ability to concentrate and persist in tasks, as well as in his ability to interact with coworkers and the public. AR 802-03.

As a consulting physician who met with Plaintiff once, the ALJ was not required to give Dr. Simutis's opinion significant deference when assessing Plaintiff's RFC. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Further, while the ALJ was required to consider Dr. Simutis's opinion, he also faced a lower bar in explaining his rejection of the opinion. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *Zachary v. Barnhart*, 94 F. App'x 817, 819 (10th Cir. 2004) (unpublished). In addressing Dr. Simutis's findings, the ALJ explained that he gave little weight both to the GAF score she assessed and to her opinion because it was not in concert with Plaintiff's own description of his condition or with the rest of the medical evidence in the record. AR 22. This was a sufficient explanation of Dr. Simutis's findings, given her minimal contact with Plaintiff and her status as a non-treating physician. *See Doyal*, 331 F.3d at 764 (explaining that it was proper for the ALJ to reject a consulting physician's opinion based on its lack of consistency with the record as a whole.).

> ii. *The ALJ improperly excluded Dr. Smith's findings regarding social interaction*

Plaintiff also contends that the ALJ erred in excluding Dr. Smith's findings that he had moderate limitations on his ability to work in coordination with or proximity to others without being distracted by them, his ability to accept instructions and respond appropriately to criticism from supervisors, his ability to get along with coworkers or peers without distracting them or

10

exhibiting behavioral extremes, and the finding that Plaintiff could only "interact appropriately with co-workers, supervisors, and the general public on an incidental basis." ECF No. 18 at 13. Further, Plaintiff contends that the ALJ modified, without explanation, Dr. Smith's recommendation for incidental contact with supervisors, co-workers, and the general public to a limitation of incidental contact with the general public only. AR 14, 808; ECF No. 18 at 15. The Commissioner responds that the ALJ's RFC does, for the most part, properly incorporate Dr. Smith's narrative assessment of Plaintiff's mental abilities, and to the extent that it does not with regard to Dr. Smith's incidental contact finding, the ALJ's finding is otherwise supported by evidence in the record. ECF No. 23 at 13.

The problem with the Commissioner's argument is that the ALJ's opinion is inherently contradictory. The ALJ stated that he concurred with, and adopted, *inter alia*, Dr. Smith's opinion restricting Plaintiff to only incidental contact with "co-workers, supervisors, **and** the general public" but then, in assessing Plaintiff's RFC, found Plaintiff capable—without qualification—of interacting appropriately with co-workers and supervisors. AR 14, 22 (emphasis added).[1] This contradiction calls into question the basis of the ALJ's finding that Plaintiff was capable of normal interactions with co-workers and supervisors, particularly given that the ALJ found at Step Three that Plaintiff has moderate social functioning limitations and

---

[1] The Commissioner has an avenue to argue that the RFC does not contradict Dr. Smith's opinion. Dr. Smith wrote that Plaintiff could "interact appropriately with co-workers, supervisors, and the general public on an incidental basis." AR 808. The ALJ might have read this as saying that, with regard to co-workers and supervisors, Plaintiff could interact appropriately; with regard to the general public, Plaintiff could only interact on an incidental basis. The Commissioner does not advance this argument but, even if she did, the argument would fail. The "Summary Conclusions" form that Dr. Smith filled out asked Dr. Smith to separately rate limitations on social interactions with the general public, supervisors, and coworkers. AR 807. Through the boxes he checked, Dr. Smith separately found that Plaintiff had moderate limitations in interacting with the general public, supervisors, and coworkers. AR 807. Given these separate findings, the record only supports a conclusion that Dr. Smith found Plaintiff limited in social interactions with the general public, supervisors, and coworkers, inclusive. Given the ALJ's adoption of Dr. Smith's opinion, this conclusion conflicts with the RFC.

11

that Plaintiff has a significant documented history of anxiety and depression that could impact his ability to interact with co-workers and supervisors. AR 14, 16, 20. As the Tenth Circuit has pointed out, "a moderate impairment is not the same as no impairment at all," and Dr. Smith, in his opinion, clearly meant to indicate a broad social functioning impairment. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). While the Commissioner seeks to excuse this contradiction by pointing to the ALJ's description of Plaintiff's other social activities, the ALJ does not point to these same facts as a basis for rejecting Dr. Smith's opinion.

The Commissioner and the ALJ could be right—Plaintiff's social contacts might support a finding that Plaintiff could have greater than incidental contact with supervisors and co-workers. Again, however, the problem is that the ALJ contradicted himself on this point. By adopting Dr. Smith's opinion, he determined that Plaintiff could only have incidental contact with supervisors and co-workers; this is inconsistent with his RFC, which contains no such limitation. The Court must therefore remand in order for the ALJ to explain the evidentiary basis for his RFC. *Haga*, 482 F.3d at 1208 (stating that the "court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

### B. Determination of Past Relevant Work

As an additional basis for remand, Plaintiff contends that the ALJ erred in determining his past relevant work. First, Plaintiff argues that the VE used the improper analogues of automotive engineer (DOT 007.061-010) and master mechanic (DOT 620.131-014) for Plaintiff's past relevant work, disregarding Plaintiff's testimony about the requirements of Plaintiff's *actual* past relevant work as a race car engineer, and in particular, Plaintiff's testimony that this job "requires frequent interaction with coworkers and supervisors as well as frequent

travelling . . . [and can] require[] the ability to maintain concentration and attention and persist[] at tasks in excess of . . . two-hour segments. . . ." ECF No. 18 at 19, AR 24, 45, 70, 228, 241. Plaintiff also asserts that the ALJ erred by failing to properly ascertain the mental demands of these jobs or his past relevant work. *Id.* at 20. The Commissioner contends that between Plaintiff's own testimony and the VE's testimony, the ALJ properly elicited the necessary information to determine the physical and mental components of Plaintiff's past relevant work. ECF No. 23 at 14. Further, the Commissioner contends that the ALJ analyzed Plaintiff's past relevant work both "as generally performed" and as "actually performed" and that Plaintiff cannot "demonstrate[] that his testimony regarding his work as he actually performed it is substantially different from the ALJ's residual functional capacity assessment . . . ." *Id.*

At Step Four, Phase Two of the sequential analysis, the ALJ is required to determine the physical and mental demands of the claimant's past relevant work. *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996). In doing so, the ALJ must first evaluate the claimant's mental and physical RFC, and must "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe." *Id.* at 1023; 20 C.F.R. § 416.945(e). The ALJ must next determine the physical and mental demands of the claimant's past relevant work and when, as here, the claimant has a mental impairment, the ALJ must acquire sufficient factual information to "obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82–62, 1982 WL 31386 at *3; *Winfrey*, 92 F.3d at 1024. At Step Four, Phase Three, the ALJ must then "compare the claimant's RFC to the demands of the

past relevant work to determine whether the claimant can still perform such work." *Farill v. Astrue*, 486 F. App'x 711, 712 (10th Cir. 2012) (unpublished) (citing *Winfrey*, 92 F.3d at 1023.).

Here, the ALJ erred at Step Four, Phase One of the sequential analysis by not incorporating limitations with co-workers and supervisors into his RFC. Because the Court has rejected Plaintiff's RFC, the Court cannot analyze whether Plaintiff's RFC allows him to meet the demands of past relevant work. *See, e.g.*, *Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011) (unpublished).

### IV.   CONCLUSION

Plaintiff has demonstrated that the ALJ failed to apply the proper legal analysis in reaching his decision with regard to Plaintiff's RFC. The Court therefore reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings. On remand, the ALJ shall ensure that all medical evidence in the record is considered at Step Four, Phases One and Two of the sequential analysis.

**IT IS SO ORDERED.**

                                                                                           _____
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**